UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| ASHLEY BURNS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 4:24-cv-00990-MAL |
| ) | |
| CITY OF ST. LOUIS, et al., ) | |
| ) | |
| Defendants. ) | |

## **MEMORANDUM AND ORDER**

The Court has reviewed and considered Defendants' Motion to Dismiss Plaintiff Ashley Burns's complaint. Doc. 8. The Court has also reviewed Burns's Motion for Leave to Amend contained within her response to the Motion to Dismiss. The Motion to Dismiss is granted in part and denied in part. Counts I and VI are dismissed. Counts II and III are dismissed to the extent they seek relief from Ingram and Williams in their official capacity *but not* to the extent they seek relief from Ingram and Williams in their personal capacity. Counts IV and V remain. Finally, Burns's Motion for Leave to Amend is denied.

### FACTS AND BACKGROUND[1]

Burns was incarcerated by Defendant City of St. Louis ("City") (Doc. 8 ¶ 8). The City has policies regarding separation of prisoners by sex. *Id*. at ¶ 35. These include that (1) prisoners must be segregated by sex and (2) officers must inspect a cell designated for female inmates before placing a male inmate in the cell. *Id*. at ¶¶ 35–37. At one point while Burns was incarcerated by the City, she was placed in a cell designated for female inmates. *Id*. at ¶¶ 9, 11. The cell lacked cameras. *Id*. at ¶ 22. Officers Geraldine Williams and Carol Ingram placed a male sex offender in the cell with Burns. *Id*. at ¶¶ 9–14. Officers Williams and Ingram knew the man was a sex offender. *Id*. at ¶ 14. The male sex offender then sexually assaulted Burns. *Id*. at ¶ 8.

Burns poses two theories for how she ended up alone in a cell with a male sex offender. Her first theory is that Officers Williams and Ingram did not know that Burns was in the cell when

---
[1] All facts pleaded in the complaint are assumed true when determining whether to dismiss counts under Rule 12(b)(6). *Ritchie v. St. Louis Jewish Light*, 630 F.3d 713, 715-16 (8th Cir. 2011).

1

they placed the male sex offender in it because they failed to inspect the cell. *Id.* at ¶ 12. Burns's second theory is that Officers Williams and Ingram knew Burns was in the cell but still chose to place a male sex offender in the cell with her. *Id.* at 8 ¶ 14.

## PROCEDURAL HISTORY

Burns filed suit against Officer Williams, Officer Ingram, and the City. Later, she amended her complaint to include federal claims. Defendants removed the action to federal court. In her operative complaint, Burns alleges:

Count I: The City allowed a dangerous condition to exist, leading to the sexual assault.

Count II: Negligent violation of ministerial duties by Officer Williams.

Count III: Negligent violation of ministerial duties by Officer Ingram.

Count IV: Violation of 42 U.S.C § 1983 for cruel and unusual punishment in violation of the U.S. Constitution's Fourth, Eighth and Fourteenth Amendments by Officer Williams in her individual capacity.

Count V: Violation of 42 U.S.C § 1983 for cruel and unusual punishment in violation of the U.S. Constitution's Fourth, Eighth and Fourteenth Amendments by Officer Ingram in her individual capacity.

Count VI: Violation of 42 U.S.C § 1983 for cruel and unusual punishment in violation of the U.S. Constitution's Fourth, Eighth and Fourteenth Amendments by the City.

Defendants then moved to dismiss all six counts on the following grounds:

- Count I should be dismissed because sovereign immunity bars claim against the City.
- Count II should be dismissed because sovereign immunity bars claims as to official capacity and because official immunity bars claims as to personal capacity.
- Count III should be dismissed because sovereign immunity bars claims as to official capacity and because official immunity bars claims as to personal capacity.
- Count IV should be dismissed because qualified immunity bars the suit.
- Count V should be dismissed because qualified immunity bars the suit.
- Count VI should be dismissed because the City is not liable under 42 U.S.C § 1983.

## LEGAL STANDARD

A pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the … claim is and the grounds

2

upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotation marks omitted). To survive a motion to dismiss under 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).  This standard requires a plaintiff to show at the pleading stage that success on the merits is more than a "sheer possibility." *Id*.  It is not, however, a "probability requirement." *Id*.  A plaintiff need not provide specific facts in support of his allegations, *Erickson v. Pardus*, 551 U.S. 89, 93 (2007), but "must include sufficient factual information to provide the 'grounds' on which the claim rests, and to raise a right to relief above a speculative level." *Schaaf v. Residential Funding Corp.*, 517 F.3d 544, 549 (8th Cir. 2008) (citing *Twombly*, 550 U.S. at 555 & n.3).  This obligation requires a plaintiff to plead "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.  A complaint "must contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." *Id*. at 562 (citation omitted).  At this stage, the Court accepts as true the factual allegations in the complaint.  *Id*. at 556.

Determining if well-pled factual allegations state a "plausible claim for relief" is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.  The well-pled facts must establish more than a "mere possibility of misconduct." *Id*.

## DISCUSSION

**I.    This Court dismisses Count I because it is barred by sovereign immunity.**

The City asserts that sovereign immunity prevents Burns from bringing a claim against it under state law.  In Missouri, "sovereign or governmental tort immunity as existed at common law in this state prior to September 12, 1977, except to the extent … modified by statutes in effect prior to that date, shall remain in full force and effect; except [where] expressly waived." Mo. Rev. Stat. § 537.600.1.  Though sovereign immunity generally applies to municipalities, *see State ex rel. Bd. of Trustees of North Kansas City Mem. Hosp. v. Russell*, 843 S.W.2d 353, 358 (Mo. 1992), Burns contends that it does not apply in this instance because Mo. Rev. Stat. § 537.600.1(2) expressly waives sovereign immunity for "injuries caused by the condition of a public entity's property."

The waiver of sovereign immunity in Mo. Rev. Stat. § 537.600.1(2) does not apply here because, for an injury to be "caused by the condition of a public entity's property," the alleged

3

defect must be a *physical feature* of the property. *State ex rel. Div. of Motor Carrier & R.R. Safety v. Russell*, 91 S.W.3d 612, 616 (Mo. 2002). "Failure to perform an intangible act, whether it be failure to supervise or warn cannot constitute a dangerous 'condition' of the 'property' for purposes of waiving sovereign immunity." *Id*. Burns argues that the prison cells contained a dangerous condition—a lack of cameras. But this is two steps removed from being the kind of defect that can give rise to a claim "caused by the condition of a public entity's property." The lack of cameras did not cause the injury. Rather, the lack of supervision did (there are multiple ways to supervise). And "failure to supervise" cannot constitute a dangerous "condition of a public entity's property" because it is a "[f]ailure to perform an intangible act." *Russell*, 91 S.W.3d at 616; Mo. Rev. Stat. § 537.600.1(2). Because sovereign immunity is not waived for Count I, it is dismissed.

**II.     The motion to dismiss Count II is granted with respect to Officer Williams's official capacity and <u>denied</u> with respect to her personal capacity.**

In Count II, Burns sues Officer Williams in her official and individual capacity for negligence and violation of ministerial duties (Doc. 8, p.5). Officer Williams argues that this count should be dismissed because she is entitled to official immunity as to her personal capacity and sovereign immunity as to her official capacity (Doc. 15, p.1). While sovereign immunity does bar the claim against her in her official capacity, she is not entitled to official immunity in her personal capacity.

**A. The motion to dismiss Count II is denied with respect to Officer Williams's personal capacity.**

Officer Williams claims that she is immune from suit in her individual capacity under the official immunity doctrine (Doc. 15, p.1). Not so at this stage of the case. Official immunity "protects public employees from liability for alleged acts of negligence committed during the course of their official duties for the performance of discretionary acts" but "does not provide public employees immunity for torts committed when [they] act[] in a ministerial capacity." *Southers v. City of Farmington*, 263 S.W.3d 603, 610 (Mo. 2008). "A ministerial or clerical duty is one in which a certain act is to be performed upon a given state of facts in a prescribed manner in obedience to the mandate of legal authority, and without regard to [the public official's] judgment or opinion concerning the propriety or impropriety of the act to be performed." *State ex rel. Alsup v. Kanatzar*, 588 S.W.3d 187, 191 (Mo. 2019) (citation omitted). "Legal authority" under Missouri law includes things like City policies. *See, e.g., Davis v. Buchanan Cnty,*

4

*Missouri.*, 11 F.4th 604, 632 (8th Cir. 2021) (official immunity analysis treating county medical policies and procedures as a mandate of legal authority.).

Here, Burns alleges that Officer Williams violated ministerial duties only, meaning that she would not be entitled to official immunity. For instance, Burns alleges that it is against City policy to put males and females together in the same cell, that cells be checked and inspected before placing a male in a female cell, that female inmates be removed from a cell if any male is placed in the cell, and that if a male is placed in a cell meant for female inmates, the correctional officer must remain in the cell with one-on-one supervision. (Doc. 8 ¶¶ 35–41). These are ministerial duties because they require officers to act in a certain way when faced with a particular set of facts. Officers are not invited to exercise their own judgment. *See Kanatzar*, 588 S.W.3d at 191.

### B. The motion to dismiss Count II is granted with respect to Officer Williams's official capacity.

Suing Officer Williams in her official capacity is a suit against the City, which is barred by sovereign immunity. *See Schaffer v. Beringer*, 842 F.3d 585, 596 (8th Cir. 2016); *Johnson v. Outboard Marine Corp.,* 172 F.3d 531, 535 *(*8th Cir. 1999).

\*       \*       \*

This Court GRANTS the motion to dismiss Count II with respect to Officer Williams's official capacity. Conversely, this Court DENIES the motion to dismiss Count II with respect to Officer Williams's individual capacity.

### III. The motion to dismiss Count III is granted with respect to Officer Ingram's official capacity and <u>denied</u> with respect to her personal capacity.

In Count III, Burns sues Officer Ingram in her official and individual capacity for negligence and violation of ministerial duties (Doc. 8, p.5). Like Officer Williams, Officer Ingram argues that this Count should be dismissed because this official-capacity claim against her is barred by sovereign immunity and because suit against her in her personal capacity is barred by official immunity (Doc. 16, p. 6–11). The suit against Officer Ingram's official capacity is barred by sovereign immunity, but the suit against her personal capacity is not barred by official immunity.

### A. The motion to dismiss Count III is denied with respect to Officer Ingram's personal capacity.

Like Officer Williams, Officer Ingram claims that she is immune from suit in her individual capacity under the official immunity doctrine (Doc. 15, p.1). Not so at this stage of the case. As

5

with Officer Williams, because Burns properly alleges that Officer Ingram violated ministerial duties only, Officer Ingram is not entitled to official immunity.

### B. The motion to dismiss Count III is granted with respect to Officer Ingram's official capacity.

Like with Officer Williams, a suit against Officer Ingram in her official capacity is a suit against the City, which is barred by sovereign immunity.  *See Schaffer*, 842 F.3d at 596; *Johnson,* 172 F.3d 531,535 *(*8th Cir. 1999).

*          *          *

This Court GRANTS the motion to dismiss Count III with respect to Officer Williams's official capacity.  Conversely, this Court DENIES the motion to dismiss Count II with respect to Officer Williams's individual capacity.

## IV. The motion to dismiss Count IV is denied.

In Count IV, Burns sues Officer Williams in her personal capacity for violation of 42 U.S.C § 1983 due to alleged violation of the Fourth, Eighth, and Fourteenth Amendments of the U.S. Constitution (Doc. 8, p.10).  Officer Williams asserts that qualified immunity shields her from this claim.  Not so.

### A. Legal Standard

"Under the doctrine of qualified immunity, a court must dismiss a complaint against a government official in his individual capacity that fails to state a claim for violation of clearly established statutory or constitutional rights of which a reasonable person would have known." *Hager v. Arkansas Dep't of Health*, 735 F.3d 1009, 1013 (8th Cir. 2013) (internal citation omitted). Here, Officer Williams does not contend that the rights are not clearly established.  Rather, she contends that Burns's Count IV fails because she fails to state enough non-conclusory facts to state a claim for violation of the Eighth and Fourteenth Amendments.[2]

The Fourteenth Amendment's Due Process Clause governs pretrial detainee claims under § 1983 regarding the duty to protect prisoners.  *Holden v. Hirner*, 663 F.3d 336, 341 (8th Cir. 2011).  The Eighth Amendment's prohibition on cruel and unusual punishment governs post-trial claims regarding the same. *Id*.  But there is little practical difference in the analysis of pretrial and postconviction claims.  *Id*.; *Kahle v. Leonard*, 477 F.3d 544, 550 (8th Cir. 2007) ("Pretrial detainees are entitled to the same protection under the Fourteenth Amendment as imprisoned

---

[2] Officer Williams does not appear to address the Fourth Amendment allegations in Count IV.

convicts receive under the Eighth Amendment."). Thus, under both the Eighth and Fourteenth Amendments, "prison officials have a duty to protect prisoners from violence at the hands of other prisoners." *Farmer v. Brennan,* 511 U.S. 825, 833 (1994) (citation omitted).  Prison officials violate this duty when two elements are met: (A) a prisoner is incarcerated under conditions "posing a substantial risk of serious harm" and (B) those officials were "deliberate[ly] indifferen[t] to inmate health or safety." *Id* at 834.  Element A is an objective question; element B is a subjective requirement to prove the official both "[knew] of and disregard[ed] an excessive risk to inmate health or safety." *Id*. at 137.

### B. Application of law to facts

Officer Williams argues that Burns's Count IV fails for three reasons:

1. Burns fails to allege that Officer Williams knew of and disregarded a substantial risk of serious harm to Burns because Burns alleges no facts showing whether and how Officer Williams knew that Burns was in the cell until it was too late. Thus, her conduct was not deliberate and she could not have actually known of and disregarded a substantial risk of serious harm to Burns.

2. The following allegations are conclusory, and so cannot be considered by the court: (a) that Officer Williams knew that the man placed in the cell with Burns "had engaged in improper sexual behavior" and (b) that Officer Williams knew that he "would engage in sexual assault" if given the opportunity; and

3. Burns's allegations that Officer Williams "knew or should have known" of a danger are conclusory and should not be considered by this court.

(Doc. 16, pp.14–15).  These arguments are not a sufficient basis on which to dismiss Count IV.

### 1. Argument 1

Officer Williams's first argument is that Burns's complaint failed to allege facts to satisfy the *mens rea* element—that Officer Williams "knew of and disregarded a substantial risk of serious harm to Burns." (Doc. 16, p.14).  Officer Williams believes she could not have had knowledge of a "substantial risk of serious harm to Burns" if she did not know that Burns was in the cell when the sex offender was placed inside as well (Doc. 16, p.14).  This argument fails.

The complaint pleads that Officer Williams was a correctional officer or correctional officer supervisor at the City of St. Louis's Justice Center (Doc. 8, ¶ 5).  It further pleads that Officer Williams placed a male inmate into a cell designated for female inmates only (Cell A). (Doc. 8, ¶¶ 9-11).  It goes on to plead that, Officer Williams knew that Burns was inside Cell A at the time the male inmate was placed into it as well (Doc. 8, ¶ 13).  It further pleads that at the time

the male inmate was placed into Cell A, Officer Williams knew that the male inmate was a violent criminal with a history of inappropriate and criminal sexual behavior (Doc. 8, ¶ 14).

Officer Williams does not dispute that this set of facts could rise to the level of a constitutional violation. Rather, Officer Williams claims that Burns contradicts herself and admits that Officer Williams did not know that Burns was in the cell when Officer Williams placed the male inmate in the cell. This argument is unsuccessful. Plaintiffs are permitted to plead several theories in the alternative. Fed. R. Civ. P. 8(d)(2) provides, "A party may set out 2 or more statements of a claim or defense alternatively or hypothetically, either in a single count or defense in separate ones. If a party makes alternative statements, the pleading is sufficient if any one of them is sufficient."

### 2.  Arguments 2 and 3

Next, Officer Williams argues that the following allegations are conclusory and so cannot be taken as true at the motion-to-dismiss stage: (a) that Officer Williams knew that the man placed in the cell with Burns "had engaged in improper sexual behavior," (b) that Officer Williams knew that he "would engage in sexual assault" if given the opportunity, and (c) that Officer Williams knew or should have known of a danger (Doc. 16, p.2). Officer Williams does not quite get the second allegation right. The complaint alleges that Officer Williams knew *there was a substantial risk* that the male inmate would engage in sexual assault if given the opportunity (Doc. 8 ¶ 74). But Officer Williams is right that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to state a claim. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). She is also right that, while "all of the factual allegations in the complaint" must be assumed "true," courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Id*.

The allegation that Officer Williams knew Burns had engaged in improper sexual behavior is neither a threadbare recital element of the cause of action nor a legal conclusion couched as a factual allegation. Recall that the elements in this case are that: (A) a prisoner is incarcerated under conditions "posing a substantial risk of serious harm" and (B) those officials were "deliberate[ly] indifferen[t] to inmate health or safety." *Farmer v. Brennan,* 511 U.S. at 834. The fact that Officer Williams knew Burns had engaged in improper sexual behavior previously is not a threadbare

8

recital of either of those elements.  Nor is it a legal conclusion.  It is a fact that can be proven or disproven to a factfinder.

The second allegation—that Officer Williams knew there was a substantial risk that the male inmate would engage in sexual assault if given the opportunity, follows the "substantial risk" language of the element "posing a substantial risk of serious harm."  This is a legal conclusion couched as a factual allegation.  The third allegation—that Officer Williams "knew or should have known" of a danger is also a legal conclusion couched as a factual allegation.

Officer Williams cites only one case in support of her argument—*Jackson v. Nixon*, 747 F.3d 537, 545 (8th Cir. 2014).  *Jackson* addresses whether a complaint alleged that a prison warden was "directly involved in making, implementing or enforcing a policy decision that created unconstitutional conditions" and held that simply alleging the prison warden "knew or should have known" of the alleged First Amendment violation was insufficient to plead the aforementioned direct-involvement element.  *Id*. (cleaned up).  That is not the case here.

Here, knowledge of past criminal sexual misconduct and violence of an inmate was alleged to demonstrate that officials were deliberately indifferent to Burns's health or safety.  Officer Williams does not appear to argue that putting a man and a woman in a cell together, unsupervised, with knowledge that the man is a "violent criminal with a history of inappropriate and criminal sexual behavior" would be insufficient to rise to the level of a constitutional violation.  Nor should she.  The Eleventh Circuit has held that "[i]t is abundantly clear … that housing a biological female alongside 40 male inmates poses an outrageous risk that she will be harassed, assaulted, raped, or even murdered."  *De Veloz v. Miami-Dade Cnty.*, 756 Fed. App'x 869, 877 (11th Cir. 2018).  It is likewise abundantly clear to this Court that housing a biological female alongside a violent male criminal who has a history of past criminal sexual misconduct poses an outrageous risk that she will be harassed, assaulted, raped, or even murdered.  *See Dothard v. Rawlinson*, 433 U.S. 321, 335 (1977) ("There is a basis in fact for expecting that sex offenders who have criminally assaulted

9

women in the past would be moved to do so again if access to women were established within the prison."). Thus, Arguments 2 and 3 fail.

*        *        *

This Court denies the motion to dismiss Count IV.

### V. This Court denies the motion to dismiss Count V.

In Count V, Burns sues Officer Ingram in her personal capacity for violation of 42 U.S.C. § 1983 for cruel and unusual punishment in violation of the U.S. Constitution (Doc. 8, p.13). Officer Ingram asserts that she is entitled to qualified immunity for the same reasons Officer Williams was. Because Burns alleges that Officer Ingram performed the same actions as Officer Williams, the same analysis applies. For the reasons stated above, Officer Ingram is not entitled to qualified immunity. The motion to dismiss Count V is denied.

### VI. The motion to dismiss Count VI is granted because Burns fails to state a claim under *Monell*.

This Court grants the motion to dismiss Count VI. Burns alleges that St. Louis City violated her constitutional rights by subjecting her to cruel and unusual punishment, which is prohibited by the Eighth Amendment. Municipalities are not entitled to absolute immunity and may be sued for constitutional violations under § 1983. *Monell v. New York City Dept. of Social Servs.*, 436 U.S. 658, 690 (1978). Under "[s]ection 1983[,] liability for a constitutional violation may attach to a municipality if the violation resulted from (1) an official municipal policy, (2) an unofficial custom, or (3) a deliberately indifferent failure to train or supervise." *Mick v. Raines*, 883 F.3d 1075, 1079 (8th Cir. 2018) (citation omitted). Burns does not allege specific facts supporting the inference that an official policy led to her assault. Nor does she allege the existence of an unofficial custom. To properly allege an unofficial custom under *Monell* a plaintiff must allege a "widespread, persistent pattern of unconstitutional misconduct." *Snider v. City of Cape Girardeau*, 752 F.3d 1149, 1160 (8th Cir. 2014). Burns does not allege facts implying a widespread pattern of misconduct. Finally, to properly allege a failure to train, a plaintiff must allege a systematic failure rather than a failure to train a particular employee. *Thelma D. By & Through Delores A. v. Bd. of Educ. of City of St. Louis*, 934 F.2d 929, 935 (8th Cir. 1991). The negligent administration of a generally sound training program is not enough to support a failure to train theory. *City of Canton, Ohio v. Harris*, 489 U.S. 378, 391 (1989). Here, Burns alleges that the City failed to train Williams and Ingram, not that the City failed to properly train

correctional officers generally (Doc. 8 ¶¶ 110–112, 115).[3]   Because Burn's allegations are particular to her incident, rather than indicative of a city-wide failure, she cannot obtain relief under *Monell*.

### VII. Leave to amend

Burns requests leave to amend her complaint to remedy any failure to comply with pleading requirements. "A party may amend its pleading … with the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). Here, it is unclear whether the interest of justice would be served by allowing Burns to amend her complaint. For instance, certain amendments might be futile. The Court thus denies the motion to amend without prejudice and instructs Burns that if she wishes to amend her pleading, she should file a motion to amend with the proposed amended pleading attached as a proposed document.

### CONCLUSION

For the aforementioned reasons, the City's Motion to Dismiss is **GRANTED** with respect to Counts I and VI. The Motion to Dismiss is **GRANTED** in part and **DENIED** in part with respect to Counts II and III. It is granted with respect to Officer Williams's and Officer Ingram's official capacities but denied with respect to their individual capacities. The Motion to Dismiss is **DENIED** with respect to Counts IV and V. Burns's Motion for Leave to Amend is **DENIED** without prejudice.

Dated this 22nd day of November 2025.

*Maria A. Lanahan*

MARIA A. LANAHAN
UNITED STATES DISTRICT JUDGE

---

[3] The use of the term "consequently" indicates that this paragraph is meant to refer to the previous paragraphs rather than constitute an independent general allegation. Rather than alleging a general failure to train, it simply alleges that the failure to train Ingram and Williams breached the City's duty to train.